No. 21-50826

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

COMMUNITY FINANCIAL SERVICES ASSOCIATION OF AMERICA,
LIMITED; CONSUMER SERVICE ALLIANCE OF TEXAS,

*Plaintiffs-Appellants*,

*v.*

CONSUMER FINANCIAL PROTECTION BUREAU; ROHIT CHOPRA, in his
official capacity as Director, Consumer Financial Protection Bureau,

*Defendants-Appellees*.

On Appeal From the United States District Court
For the Western District of Texas
Case No. 1:18-cv-00295-LY

**APPELLEES' RESPONSE TO PETITION FOR REHEARING**

Seth Frotman
  *General Counsel*
Steven Y. Bressler
  *Deputy General Counsel*
Kristin Bateman
  *Assistant General Counsel*
Kevin E. Friedl
Karen S. Bloom
  *Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
(202) 435-9269
kevin.friedl@cfpb.gov

## TABLE OF CONTENTS

Introduction ............................................................................................................1

Statement of the Case ............................................................................................1

Argument.................................................................................................................6

I.  Petitioners seek rehearing on issues this Court conclusively resolved
    in 2022 and on which the Supreme Court has already denied certiorari. ..........6

II.  Rehearing is not warranted on Petitioners' removal-provision claim. ..............8

III.  Rehearing is not warranted on the invented "efficiency" holding...................14

Conclusion ............................................................................................................17

**Cases**                                                                                          **Page(s)**

*Bhatti v. FHFA*,
    97 F.4th 556 (8th Cir. 2024) ..............................................................................10

*CFPB v. CashCall, Inc.*,
    35 F.4th 734, 742 (9th Cir. 2022) .....................................................................14

*CFPB v. Cmty. Fin. Servs. Ass'n of Am., Ltd.*,
    601 U.S. 416 (2024) ............................................................................................5

*CFPB v. Law Offices of Crystal Moroney, P.C.*,
    63 F.4th 174 (2d Cir. 2023) ..............................................................................10

*CFPB v. Nat'l Collegiate Master Student Loan Tr.*,
    96 F.4th 599 (3d Cir. 2024) ...................................................................... 10, 13

*Cmty. Fin. Servs. Ass'n of Am., Ltd. v. CFPB*,
    143 S. Ct. 981 (2023) ......................................................................................5, 7
    104 F.4th 930 (5th Cir. 2024) ..........................................................................6, 8
    51 F.4th 616 (5th Cir. 2022) ..................................................................... *passim*
    558 F. Supp. 3d 350 (W.D. Tex. 2021) .............................................................4

*Collins v. Mnuchin*,
    938 F.3d 553 (5th Cir. 2019) (en banc) ...........................................................10

*Collins v. Yellen*,
    594 U.S. 220 (2021) ................................................................................. *passim*

*Huawei Techs. USA, Inc. v. FCC*,
    2 F.4th 421 (5th Cir. 2021) ..............................................................................16

*Johnson v. Lumpkin*,
    76 F.4th 1037 (5th Cir. 2023) ..........................................................................17

*Judulang v. Holder*,
    565 U.S. 42 (2011) ............................................................................................16

*Kaufmann v. Kijakazi*,
    32 F.4th 843 (9th Cir. 2022) ............................................................................14

*Leachco, Inc. v. Consumer Prod. Safety Comm'n*,
  103 F.4th 748 (10th Cir. 2024) ................................................................ 10, 14

*Nat'l Mining Ass'n v. Babbitt*,
  172 F.3d 906 (D.C. Cir. 1999) .............................................................. 16

*New Era Publ'ns Int'l, APS v. Henry Holt, Co.*,
  884 F.2d 659 (2d Cir. 1989) (en banc) .................................................. 7

*Paroline v. United States*,
  572 U.S. 434 (2014) ................................................................................ 9

*Rop v. FHFA*,
  50 F.4th 562 (6th Cir. 2022) .................................................................. 11

*Seila Law LLC v. CFPB*,
  591 U.S. 197 (2020) ............................................................................ 3, 11

*Taylor v. Norris*,
  401 F.3d 883 (8th Cir. 2005) .................................................................. 7

*United States v. Becerra*,
  155 F.3d 740 (5th Cir. 1998) .................................................................. 7

*Wages & White Lion Invs., LLC v. FDA*,
  16 F.4th 1130 (5th Cir. 2021) ................................................................ 16

**Rules**

Fed. R. App. P. 35(b) .................................................................................. 7

Fed. R. App. P. 40(a)(1) ........................................................................ 6, 7

**Regulations**

Payday, Vehicle Title, and Certain High-Cost Installment Loans, Notice of
  Proposed Rulemaking, 84 Fed. Reg. 4252 (Feb. 14, 2019) .................... 3

Payday, Vehicle Title, and Certain High-Cost Installment Loans; Ratification of
  Payment Provisions, 85 Fed. Reg. 41905 (July 13, 2020) ...................... 4

Payday, Vehicle Title, and Certain High-Cost Installment Loans, Final Rule,
  85 Fed. Reg. 44382 (July 22, 2020) ...................................................... 3

**Other Authorities**

Br. for United States, *PHH Corp. v. CFPB*, No. 15-1177
  (D.C. Cir. Mar. 17, 2017), 2017 WL 1035617.....................................................12

Cross-Pet. for Cert., *CFSA v. CFPB*, 2023 WL 336413 (Jan. 13, 2023)...............5, 7

## INTRODUCTION

The Court should deny rehearing. Petitioners seek rehearing on issues that the panel conclusively (and unanimously) resolved nearly two years ago and that the Supreme Court declined to review. Those issues should no longer be open to relitigation. The panel's holding concerning an invalid statutory removal provision follows directly from *Collins v. Yellen*, 594 U.S. 220 (2021), and is consistent with how every other circuit has applied that decision. And Petitioners' suggestion that the panel upheld the challenged regulation based solely on "agency convenience" is a fabrication. The panel's actual holdings are correct, case-specific, and not in conflict with Petitioners' cited decisions. En banc review is unwarranted.

## STATEMENT OF THE CASE

1. Petitioners, two payday-lender groups, sued to invalidate a commonsense consumer-protection rule.

The rule applies to payday loans and similar high-cost consumer credit. Lenders offering these loans, in contrast to lenders in other markets, often repeatedly attempt to withdraw payment from borrowers' accounts—as many as 11 times a day—even after initial attempts have failed for insufficient funds. These lenders also initiate withdrawals in other ways consumers are unlikely to anticipate and that can lead to more failed attempts—for example, by breaking payments into

multiple smaller requests or attempting to collect payment on a different date from the one the consumer agreed to.

These multiple unexpected withdrawal attempts matter because each failed attempt can trigger a variety of hefty fees for the borrower—including nonsufficient fund (NSF) fees, overdraft fees, and lender-imposed return fees—that can quickly add up to hundreds of dollars. Repeat failed withdrawal attempts also make it more likely a bank will terminate the consumer's account, potentially cutting off the consumer's access to the banking system. At the same time that this practice piles pain on borrowers who almost by definition are already in financial distress, it produces only minimal benefits for lenders, since—not surprisingly— repeat withdrawal attempts rarely succeed once a borrower's account has been shown to have insufficient funds.

To address these harms, the rule adopts a narrowly targeted proscription: It bars covered lenders from continuing to attempt to withdraw money from a borrower's account after two prior attempts have failed for lack of sufficient funds, unless the lender obtains new authorization from the borrower to do so. The rule does not otherwise limit lenders' ability to seek payment on a covered loan.

The Consumer Financial Protection Bureau issued the rule in 2017. At the time, the Bureau was headed by Director Richard Cordray, who was appointed by President Obama and confirmed by the Senate.

The rule as originally issued differed substantially from the rule as it now exists. It originally comprised two parts. First, the "Underwriting Provisions" would have imposed significant new requirements on lenders to ensure that borrowers had the ability to repay their loans. As discussed below, these provisions were rescinded during the Trump administration and are not at issue. Second, the "Payments Provisions" will provide the important but narrow protection just described, requiring lenders to obtain new borrower authorization before they can continue to debit an account shown to have insufficient funds.

After Director Cordray resigned, President Trump selected Mick Mulvaney to head the Bureau. In his capacity as Acting Director, Mulvaney was removable by the President at will. *See Collins v. Yellen*, 594 U.S. 220, 250 (2021).

Soon after Acting Director Mulvaney's arrival, the Bureau announced that it would undertake a rulemaking to reconsider the original rule. *See* CFPB, Statement on Payday Rule (Jan. 16, 2018), https://go.usa.gov/xQ6SE. While that rulemaking was ongoing, President Trump nominated and the Senate confirmed Kathleen Kraninger as Director. Two months later, the Bureau issued a proposed rule to rescind in full the Underwriting Provisions but leave in place the Payment Provisions. 84 Fed. Reg. 4252 (Feb. 14, 2019). The Bureau finalized that rule the next year. 85 Fed. Reg. 44382 (July 22, 2020). Following the Supreme Court's holding in *Seila Law LLC v. CFPB*, 591 U.S. 197 (2020), that she was removable

by the President at will, Director Kraninger expressly ratified the Payments Provisions, 85 Fed. Reg. 41905 (July 13, 2020).

2.  Petitioners alleged in this suit that the rule was arbitrary and capricious and exceeded the Bureau's authority. Petitioners also claimed the rule was invalid because it was issued before *Seila Law* made clear that the Director is removable at will and because the Bureau is funded through an appropriation in its statute rather than via annual spending bills. The district court granted summary judgment to the Bureau on all counts. *CFSA v. CFPB*, 558 F. Supp. 3d 350 (W.D. Tex. 2021).

On appeal, a panel of this Court unanimously affirmed the grant of summary judgment to the Bureau on all counts but one. *CFSA v. CFPB*, 51 F.4th 616 (5th Cir. 2022). The panel rejected Petitioners' claims that the rule was arbitrary and capricious and exceeded statutory authority. *Id.* at 626-31. As relevant here, it found that it was reasonable for the Bureau: (1) to decline to exempt withdrawal attempts made by debit or prepaid card; and (2) for covered installment loans, to apply the rule's two-failed-withdrawal limit across scheduled installment payments, rather than restarting the count with each scheduled payment. *Id.* at 630.

The panel also rejected Petitioners' claim based on the removal provision that the Supreme Court held invalid in *Seila Law*. It noted the Supreme Court's holding that, to obtain additional relief beyond a declaration that a removal provision is invalid, a party "must demonstrate … that 'the unconstitutional

removal provision inflicted harm.'" *Id.* at 631 (quoting *Collins*, 594 U.S. at 260). Without deciding what in all cases would be necessary to show "harm," the panel concluded that—at minimum—Petitioners needed to demonstrate some "nexus" or "connection" "between the President's frustrated desire to remove the actor and the agency action complained of." *Id.* at 632. The panel found that Petitioners had not met even this minimal showing where their only support was "a few carefully selected statements from Director Cordray's book" in which he described his concern that he would be removed, along with an online article about the book that repeated those statements. *Id.* at 633.

The panel agreed with Petitioners, however, that the rule was invalid due to the Bureau's funding. *Id.* at 635-44.

The Bureau filed a petition for certiorari on the funding claim, which the Supreme Court granted. Petitioners filed a cross-petition asking for review on their claims that the rule was arbitrary and capricious and invalid due to the removal provision. Cross-Pet. for Cert., *CFSA*, 2023 WL 336413 (Jan. 13, 2023). The Court denied that request. 143 S. Ct. 981 (2023).

On the merits of the funding claim, the Court—Justice Thomas writing— reversed the panel and upheld the Bureau's funding. *CFPB v. CFSA,* 601 U.S. 416 (2024). When the case returned to this Court, the panel, understanding the Supreme Court to have "reversed our judgment in its entirety," entered a short per curiam

opinion "declaring that the Bureau's funding structure, and thereby the Payday Lending Rule, is constitutional" and "reinstat[ing] our judgment affirming the district court's ruling in favor of Defendants based on Plaintiffs' alternative arguments." 104 F.4th 930 (5th Cir. 2024) (capitalization altered).

Petitioners seek en banc rehearing on two of those alternative arguments.

## ARGUMENT

**I.   Petitioners seek rehearing on issues this Court conclusively resolved in 2022 and on which the Supreme Court has already denied certiorari.**

The Court should deny the petition as an improper attempt to reopen issues that the Court definitively resolved in this case nearly two years ago.

Petitioners seek en banc review of claims the panel resolved in its decision and judgment of October 19, 2022. But the time to seek rehearing of that decision expired on December 5, 2022. *See* Fed. R. App. P. 40(a)(1). Petitioners did not seek rehearing before that deadline—even after the Bureau filed its petition for certiorari on November 14, which made clear the possibility that the panel's ruling on funding might not stand. The issuance of the mandate on December 12, 2024, thus marked the end of proceedings on Petitioners' non-funding claims in this Court, and those claims should no longer be open to relitigation in this case.

Following the Supreme Court's decision, Petitioners told the panel that they "lacked a prior opportunity" to petition for rehearing. Pets.' Rule 28(j) Ltr. of 5/16/24, Doc. 122 (stricken). That is wrong. Rehearing petitions "may be filed by

*any* party." Fed. R. App. P. 40(a)(1); *see also* Fed. R. App. P. 35(b) ("*a* party").

Thus, prevailing parties may and do seek rehearing. *E.g.*, *Taylor v. Norris*, 401

F.3d 883, 884 (8th Cir. 2005); *New Era Publ'ns Int'l, APS v. Henry Holt, Co.*, 884

F.2d 659 (2d Cir. 1989) (en banc). The Bureau's petition for certiorari gave

Petitioners clear reason to consider doing so. And even if Petitioners mistakenly

thought they could not seek rehearing at that time, they could have taken other

steps to preserve the chance for later review, such as by requesting a stay of the

mandate or an extension of their deadline to seek rehearing.

Petitioners took no such steps. Instead, they filed a cross-petition for

certiorari asking the Supreme Court to review their non-funding claims and making

many of the very same arguments they raise here. Cross-Pet. for Cert., *CFSA*, 2023

WL 336413. The Court denied that request. 143 S. Ct. 981 (2023).

This Court should not entertain Petitioners' extraordinary request for

rehearing after they forwent that opportunity before and unsuccessfully sought

review from the Supreme Court instead. Doing otherwise would only encourage

losing parties to improperly prolong litigation through gamesmanship, *cf. United

States v. Becerra*, 155 F.3d 740, 752 (5th Cir. 1998) ("[T]here would be no end to

a suit if every obstinate litigant could, by repeated appeals, compel a court to listen

to criticisms on their opinions or speculate of chances from changes in its

members."), while making a mockery of the Federal Rules governing rehearing.

Worse, if Petitioners got their way, and the en banc Court were later to invalidate the rule on some non-funding ground, that would render the Supreme Court's consideration of and decision in this case unnecessary to the outcome, in seeming contravention of basic principles of constitutional avoidance and judicial hierarchy.

The panel's recent per curiam opinion does not change the analysis. That opinion did not address the merits of any of Petitioners' claims and so did not restart the clock for Petitioners to seek review on issues decided in 2022. It simply reinstated the non-funding portions of the panel's prior opinion, apparently in an abundance of caution that the Supreme Court, in resolving the funding claim, had reversed the prior opinion in its entirety. *CFSA*, 104 F.4th at 930. Those reinstated portions, however, were decided nearly two years ago and should no longer be open to relitigation.

## II.   Rehearing is not warranted on Petitioners' removal-provision claim.

In *Collins*, the Supreme Court held that to secure relief based on an invalid removal provision (beyond a declaration of the provision's invalidity), a party must show that the provision "caused" or "inflicted" harm. 594 U.S. at 259-60. The panel understood that to mean that a party must establish at least some "nexus" or "connection" "between the President's frustrated desire to remove the actor and the agency action complained of." *CFSA*, 51 F.4th at 632. Here, that meant showing "that, but for the removal restriction, President Trump would have removed

Cordray [the Director when the rule was originally issued] *and* that the Bureau would have acted differently as to the rule." *Id.* at 633.

Petitioners did not make that showing. They offered only "secondhand accounts of President Trump's supposed intentions" to remove Director Cordray. *Id.* And they provided no reason at all to think that Cordray's removal would have changed the substance of the Payments Provisions they challenged here, which the Trump administration expressly ratified after replacing Cordray (as opposed to the Underwriting Provisions, which it rescinded). *Id.* The panel's ruling was correct and is consistent not only with *Collins* but with the decisions of every other circuit to have applied that case.

But-for causation is "[t]he traditional way to prove that one event was a factual cause of another" and a "familiar part of our legal tradition." *Paroline v. United States*, 572 U.S. 434, 449-50 (2014). Thus, the panel sensibly understood the requirement to show that a removal provision "caused" or "inflicted" harm to require a showing that, but for the removal provision, the complained-of agency action would have been different in some meaningful way.

To conclude otherwise would ignore the Supreme Court's clear holding that the removal provision must itself "cause" harm. And it would defy basic remedial principles by putting parties into a better position than they would have been without the removal provision—for example, where a party sought to set aside

"decisions … with which the President agreed." *CFSA*, 51 F.4th at 632. That is especially true in this case. The rule (as amended) has now been expressly approved by multiple officials appointed by, and removable at will by, both Presidents Trump and Biden. As the en banc Court previously concluded in similar circumstances, it would make little sense to "invalidate those Presidents' executive actions by invoking their need to exercise executive authority." *Collins v. Mnuchin*, 938 F.3d 553, 594 (5th Cir. 2019) (en banc), *aff'd in part, vacated in part, rev'd in part*, 594 U.S. 220. So too, there is no basis to conclude that any prior perceived inability to remove the Director had an effect on the rule as amended, which multiple administrations have now approved and defended.

At least five other circuits have read *Collins* exactly as the panel did here. *See Leachco, Inc. v. Consumer Prod. Safety Comm'n*, 103 F.4th 748, 756 (10th Cir. 2024) (asking whether "removal provision actually affected the agency's decision or conduct"); *Bhatti v. FHFA*, 97 F.4th 556, 559-62 (8th Cir. 2024) (asking whether "inability to remove [the official] frustrated the administration's goals" in a way that "harm[ed]" the challengers); *CFPB v. Nat'l Collegiate Master Student Loan Tr.*, 96 F.4th 599, 615 (3d Cir. 2024) (asking whether challenged action "would [not] have been undertaken but-for a president's authority to remove the CFPB's Director"); *CFPB v. Law Offices of Crystal Moroney, P.C.*, 63 F.4th 174, 180 (2d Cir. 2023) (asking whether "agency action would not have been taken

but for the President's inability to remove"); *Rop v. FHFA*, 50 F.4th 562, 575-77 (6th Cir. 2022) (asking whether "restriction actually affected any actions implementing the [challenged agency action]").

Petitioners say (at 7-9) that all these decisions, and the panel's, are wrong and that the President's mere un-acted-upon wish to remove an agency official renders void all actions by that agency. But *Collins* does not say that. (And even if it did, that would not help Petitioners because, as the panel found, they failed to make even that showing. *CFSA*, 51 F.4th at 633.) It instead requires that the removal provision itself "cause" harm, meaning that a party must, at minimum, establish some connection between the provision and the challenged action.

Petitioners complain (at 11) that *Collins* "makes it all but impossible … to obtain meaningful relief." To begin with, Petitioners' claim ignores the significant relief already afforded Petitioners by *Seila Law*, which held that the Director must be removable at will by, and thus fully accountable to, the President. As a result of that decision, Petitioners can be assured that the rule—and any future action to implement it—will be overseen by the President, "the most democratic and politically accountable official in Government." *Seila Law*, 591 U.S. at 224. Petitioners are simply wrong to belittle that important ruling as not "meaningful."

Moreover, *Collins* itself gave two examples providing a roadmap for obtaining additional relief. First, where the President "attempted to remove a

Director but was prevented from doing so by a lower court decision holding." 594 U.S. at 259. Second, where the President "made a public statement expressing displeasure with actions taken by a Director and … asserted that he would remove the Director if the statute did not stand in the way." *Id.* at 260.

Petitioners think these two examples help them, but neither applies here. The President did not attempt to remove the Director and was not thwarted by an adverse court decision. Nor have Petitioners ever identified any public statement by President Trump expressing displeasure with the rule and asserting that he would remove Director Cordray if not for the statute. Just the opposite is true. The Trump administration's "public statement[s]" established that President Trump's position was that the removal provision was unconstitutional and invalid. *See, e.g.*, Br. for United States, *PHH Corp. v. CFPB*, No. 15-1177 (D.C. Cir. Mar. 17, 2017), 2017 WL 1035617. And President Trump make no public statement "expressing displeasure" with the rule as amended by his own administration. To the contrary, his appointee, Director Kraninger, expressly ratified the amended rule while it was clear she was removable at will.

So Petitioners fall back (at 9-10) on an analogy to Appointments Clause cases. But *Collins* expressly distinguished those cases and held that an invalid removal provision does make a duly appointed official comparable to an invalid appointee and does not mean that such official "lack[s] the authority to carry out

the functions of the office." 594 U.S. at 257-58; *see also id.* at 266 (Thomas, J., concurring) (further explaining why "Appointments Clause cases do not help the [challengers]").

Petitioners get confused (at 7, 8-9) by *Collins*'s first example, involving an official who the President removes but who is ostensibly kept in office by a court ruling based on an invalid removal provision. *That* official may well be in the same position as an invalid appointee. Because "an unconstitutional provision is never really part of the body of governing law," *id*. at 259 (majority op.), the President's action in removing the official might itself be enough to deprive the official of "the authority to carry out the functions of the office," *id.* at 258. But an actually-effected removal is worlds away from what Petitioners claim is sufficient: an unexpressed and unenacted desire in the President's mind to fire the official. Here, again, the President did not act to remove the Director—and Petitioners failed even to show that he wanted to but felt constrained by the statute.

Petitioners get no further imagining (at 10-11) a circuit split. None exists. They misread decisions from the Third and Tenth Circuits, both of which *agreed* with the panel here. The Third Circuit described the relevant question as whether "the CFPB would have taken this action but for the President's inability to remove the Director." *Nat'l Collegiate*, 96 F.4th at 615. And the Tenth Circuit held that, "[t]o establish harm under *Collins*, [the plaintiff] would need to make a showing

13

that the challenged removal provisions actually impacted, or will impact, the actions taken by the [agency] against it." *Leachco*, 103 F.4th at 757; *see also id.* at 756 n.7 (quoting and agreeing with the panel's reading of *Collins*).

The two Ninth Circuit decisions Petitioners provide also did not break with the panel. They merely referred in shorthand fashion to the examples from *Collins* without endorsing—let alone applying—Petitioners' theory that the President's secret wish to remove an official renders invalid all agency actions, even those that the President and his administration expressly approve and endorse. *See CFPB v. CashCall, Inc.*, 35 F.4th 734, 742 (9th Cir. 2022); *Kaufmann v. Kijakazi*, 32 F.4th 843, 849-50 (9th Cir. 2022).

## III. Rehearing is not warranted on the invented "efficiency" holding.

Petitioners also seek review of the panel's conclusions that it was reasonable to choose (1) not to exempt withdrawal attempts made by debit or prepaid cards and (2) not to restart the failed-withdrawal count for each scheduled payment on a covered installment loan. Petitioners suggest (at 13) that the panel reached these results based solely on "agency convenience." The panel did nothing of the sort.

For debit/prepaid withdrawals, the panel noted that the Bureau declined to exempt them "for several reasons." *CFSA*, 51 F.4th at 630. While those transactions do not trigger one kind of fee (nonsufficient fund fees), they can trigger numerous others, including overdraft fees, return-payment fees, and lender-

imposed late fees. *Id.* Thus, repeat failed withdrawal attempts via debit or prepaid card can cause the exact harms the rule was meant to address. In addition, the panel noted the rule's finding that "a carve out for these transactions would be impracticable to comply with and enforce." *Id.* (quotation marks omitted).

Likewise, the panel relied on several grounds in finding reasonable the rule's application to covered installment loans. Data showed that a third withdrawal attempt, even for a different scheduled payment, would still likely fail "even if two weeks or a month has passed" since the last attempt, *id.*—thus triggering the same harms for borrowers. Other evidence—in particular, the experience of a self-governing private organization in overseeing a similar limit on failed withdrawals attempts on the ACH network—demonstrated that attempting to "distinguish[] between re-presentments of the same payment and new presentments for new installments would invite evasion." *Id.* In addition, attempting to write that distinction into the rule "would add considerable complexity." *Id.*

Petitioners' case for rehearing thus melts away upon reading the panel's actual decision. Contrary to Petitioners' inaccurate claims (at xxi, 13-14), the panel did not "ultimately rel[y] on administrative efficiency," "agency convenience," or "cheapness alone" as a "substitute for reasoned decisionmaking." Instead, the panel noted obvious administrability concerns that would be created by the special exceptions Petitioners sought—but only *after* describing how the rule's application

15

to debit/prepaid withdrawals and covered installment payments was reasonable because both can trigger the harms the rule seeks to address. The panel's analysis is correct and consistent with Circuit law. *See Huawei Techs. USA, Inc. v. FCC*, 2 F.4th 421, 456 (5th Cir. 2021) (crediting agency's conclusion that the reasonable option it chose would be "easier for providers to implement and for the Commission to enforce" (quotation marks omitted)).

The panel's case-specific and correct holdings do not warrant en banc review and are not in conflict with any of the opinions Petitioners cite (at 14-15). Those opinions rejected arguments that *efficiency alone* could justify an agency decision that could not otherwise be supported. *See Judulang v. Holder*, 565 U.S. 42, 63-64 (2011) ("[C]heapness alone cannot save an arbitrary agency policy."); *Wages & White Lion Invs., LLC v. FDA*, 16 F.4th 1130, 1137 (5th Cir. 2021) (rejecting argument that "efficiency" could justify an otherwise unreasonable agency action); *Nat'l Mining Ass'n v. Babbitt*, 172 F.3d 906, 912-13 (D.C. Cir. 1999) (rejecting appeal to "efficiency" as justification for an "inherently illogical" decision). In stark contrast, the rule's application to debit/prepaid withdrawals and covered installment payments was well grounded, and the complications that would have been created by Petitioners' desired carveouts merely provided an additional reason it was reasonable to reject those carveouts.

The Court recently warned against filing petitions for en banc review that "misstate[] the opinion's conclusion" and where "[a] good-faith reading of the court's opinion clearly shows that it does not hold what counsel says it holds." *Johnson v. Lumpkin*, 76 F.4th 1037, 1039 (5th Cir. 2023). The Court should enforce that warning here and deny the petition.

## CONCLUSION

The Court should deny rehearing.

Dated:  August 5, 2024

Respectfully submitted,

Seth Frotman
　*General Counsel*
Steven Y. Bressler
　*Deputy General Counsel*
Kristin Bateman
　*Assistant General Counsel*

*/s/ Kevin E. Friedl*
Kevin E. Friedl
Karen S. Bloom
　*Senior Counsel*
Consumer Financial Protection Bureau
1700 G Street NW
Washington, DC 20552
(202) 435-9268
kevin.friedl@cfpb.gov

*Counsel for Defendants-Appellees*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 35. It contains 3,888 words, excluding the portions exempted by Rule 32(f), and was prepared using Microsoft Word for Microsoft 365.

/s/ Kevin E. Friedl
Kevin E. Friedl